UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

RONALD L. JONES, JR.,

    Plaintiff,

V.

TODD LAFFERTY,

    Defendant.

Civil Action No. 5: 15-51-KKC

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon the motion of defendant Todd Lafferty to dismiss the complaint. [R. 34] Plaintiff Ronald L. Jones, Jr., has filed a response in opposition to the motion [R. 41], to which Lafferty has replied. [R. 42] The motion is therefore ripe for decision.

I.    Factual Background.

Proceeding without counsel, Jones filed this action on March 2, 2015. [R. 1] In his amended complaint, Jones indicated that on December 11, 2014, he was sitting on the sofa in his apartment when Probation and Parole Officer Todd Lafferty and several Lexington police officers used a key to open the door, and entered the premises without knocking, without announcing their presence, and without a warrant. [R. 17 at pp. 3-4] Lafferty arrested Jones at that time because "violations of supervision were present in the residence." [R. 1-1 at p. 1] Jones alleges that Lafferty used unnecessary force during the arrest, and that as a result he had to be treated by medical staff at the Fayette County Jail. Jones contends that Officer Lafferty violated the Fourth Amendment by entering his apartment without a warrant, and the Eighth and Fourteenth Amendments by using excessive force. [R. 17 at pp. 3-4, 7]

Upon initial screening of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, the Court dismissed a number of claims against state and county officials, as well as the manager of the apartment complex and the property management company. The Court permitted Jones' claims against Officer Lafferty "regarding warrantless entry and unnecessary force" to proceed, and ordered that he be served with process. [R. 24]

In support of his motion for dismissal, Lafferty first contends that under *Samson v. California*, 547 U.S. 843 (2006), the Fourth Amendment does not require either a warrant or reasonable suspicion to search Jones' apartment because he was on parole at the time, and therefore Jones' allegation that Lafferty lacked a warrant fails to state a claim. [R. 34-1 at pp. 3-5] Lafferty further contends that he is entitled to qualified immunity because as a parolee Jones had no clearly established right prohibiting the warrantless search of his home. [R. 34-1 at pp. 5-6] The motion to dismiss is unsupported by an affidavit from Lafferty or authenticated documentation.

In his response, Lafferty confirms that he was on parole on the date of the search and arrest. [R. 41 at p. 2] He contends, however, that because the "consent-to-search" language applicable to Kentucky parolees under Kentucky Department of Corrections ("KDOC") Policy No. 27–16–01 II(D) (the "KDOC Policy") is narrower than the California provision at issue in *Samson*, the search of his apartment – supported by neither a warrant nor reasonable suspicion – was unreasonable in violation of the Fourth Amendment.[1] [R. 41 at pp. 3-4]

---

[1] Ordinarily, internal policies of an agency such as KDOC do not constitute positive law because they are neither statutes enacted by the legislature nor regulations promulgated in conformity with the notice and comment procedures required by administrative law. Here, however, the KDOC Policy does carry the force of law because Ky. Rev. Stat. 439.470(1) authorizes the Kentucky parole commissioner to promulgate appropriate regulations, and 501 KAR 6:270, as a regulation adopted in conformity with Kentucky's administrative procedures act, expressly incorporates KDOC Policy 27-16-01 (Amended 7/11/12) by reference. See *United States v. Payne*, 181 F. 3d 781, 786-87 (6th Cir. 1999).

Lafferty therefore requests discovery to determine whether the search was supported by reasonable suspicion. [R. 41 at p. 5]

In reply, Lafferty counters that permitting discovery would undermine the purpose of qualified immunity, and that the Kentucky Supreme Court held in *Bratcher v. Commonwealth*, 424 S.W.3d 411 (Ky. 2014) that the particular language of the "consent to search" provision at issue is irrelevant for Fourth Amendment purposes. Lafferty separately alleges that the search was conducted by the Kentucky State Police, not Lexington police officers, thus rendering the KDOC Policy irrelevant, and that the KSP officers actually did have a warrant to search Jones' apartment. [R. 42 at p. 2, p. 4 n.2] However, Lafferty has failed to support either assertion by placing evidence into the record.

II.     Discussion.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). A complaint must contain allegations, either expressly stated or necessarily inferred, with respect to every material element necessary to sustain a recovery under some viable legal theory. *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). But the complaint must be dismissed if it undoubtedly fails to allege facts sufficient to state a facially-plausible claim. *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012).

Ordinarily, the sufficiency of the complaint is tested with reference only to the face of the complaint itself. *Burns v. United States*, 542 F. App'x 461, 466 (6th Cir. 2013). This includes, of course, documents incorporated into the complaint by reference. *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court may also consider "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011). Of particular relevance here, if a plaintiff refers to a document in the complaint and it is central to her claim, the document will be considered part of the pleadings even if the plaintiff did not attach it to her complaint if the defendant attaches it to the motion to dismiss. *Campbell v. Nationstar Mtg.*, 611 F. App'x 288 (6th Cir. 2015) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). See also *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

Lafferty's motion to dismiss Jones' complaint must be first denied, at least in part, because he does not reference, address, or challenge the sufficiency of Jones' excessive force claim.[2] Lafferty's assertion that the Court only "allowed Jones' Fourth Amendment claim against Officer Lafferty in his individual capacity to proceed" [R. 34-1 at p. 2] is incorrect. [R. 24 at p. 5 ("Jones's allegations regarding warrantless entry ***and unnecessary force*** against Officer Lafferty in his individual capacity do not clearly fail to state a claim, and the Court will therefore order the complaint to be served upon Officer Lafferty for response.") (emphasis added)] Having failed to make any effort to argue against the viability of half of the claims in the complaint, Lafferty lays no plausible claim to the dismissal of all of it.

Instead, Lafferty's motion challenges only the sufficiency of Jones' claim that the warrantless search of his apartment violated the Fourth Amendment. It is entirely unclear why Lafferty chose not to rely upon the warrant that he contends was issued to permit the

---

[2] It is not entirely clear whether an excessive force claim by a parolee under supervision is governed by the Fourth Amendment, which applies to free citizens, or the Fourteenth Amendment, which applies to pretrial detainees. Jones having invoked both amendments, the Court need not address the question here.

search of Jones' apartment [R. 42 at p. 4 n.2], potentially a much simpler path to the dismissal he seeks, whether by attaching it to his motion to dismiss or by filing a motion for summary judgment. Further, if the search led to evidence which resulted in Jones' subsequent conviction (as opposed to a mere revocation of his parole) his claim may be barred by *Heck v. Humphery*, 512 U.S. 477 (1994). Cf. *Boyer v. Mohring*, 994 F. Supp. 2d 649, 654 (E.D. Pa. 2014) (holding that parolee's Fourth Amendment claim against parole officer barred by *Heck* where search led to evidence resulting in plaintiff's criminal conviction). This is important because Lafferty's argument that the search was consistent with the Fourth Amendment, even though it was supported by neither a warrant nor reasonable suspicion, fails to provide a basis to dismiss the complaint for failure to state a claim. Nor can the Court conclude that Lafferty is entitled to qualified immunity on this claim, at least upon the record before it. The Court must therefore deny his motion to dismiss Jones' Fourth Amendment claim at this juncture.

Lafferty's motion to dismiss is not premised upon the usual or necessary grounds for dismissal – the absence of one or more necessary factual allegations in Jones' complaint. Instead, Lafferty flatly contends that Jones has no rights whatsoever under the Fourth Amendment to prevent even an unreasonable search simply because he was on parole. [R. 34-1 at p. 1] Lafferty's argument is that he is entitled to judgment as a matter of law because there is no set of facts that Jones could allege that would ever entitle him to relief.

Procedurally, a motion for summary judgment, not a motion to dismiss, is the proper vehicle for Lafferty's argument.[3] Substantively, Lafferty relies upon the Kentucky Supreme

---

[3] A trial court must resist the temptation to dismiss a claim by applying a standard that is not properly urged by the movant. Cf. *Boyer*, 994 F. Supp. 2d at 655 (erroneously applying summary judgment standard to dismiss Fourth Amendment claim for failure to state a claim based upon its conclusion that the warrantless search was supported by reasonable suspicion, and thus "even when viewing the evidence in the light most favorable to Plaintiff, no plausible Fourth Amendment violation under Section 1983 has been established…")

5

Court's statement that "the Fourth Amendment presents no impediment against a warrantless and suspicionless search of a person on parole." *Bratcher*, 424 S.W.3d at 415. With due respect to our sister court, that conclusion misapprehends the holdings and the reasoning of the Supreme Court precedent upon which it relies. To reach a fuller understanding of why this is so, a brief discussion of the evolution of the Supreme Court's Fourth Amendment jurisprudence in this area provides some helpful historical context.

The Fourth Amendment protects the right of citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy. *Kyllo v. United States*, 533 U.S. 27, 33-34 (2001). In determining whether a particular search is permissible under the Fourth Amendment, "the touchstone … is reasonableness." *United States v. Lifshitz*, 369 F.3d 173, 178 (2d Cir. 2004). With very few exceptions, a search conducted by government officials without a warrant supported by probable cause is presumptively unreasonable. *Kyllo*, 533 U.S. at 32 (citing *Katz v. United States*, 389 U.S. 347 (1967)).

In a series of cases decided since 1987, the Supreme Court has explored whether a search conducted under the authority provided by a state statute, regulation, or court order which permits the warrantless search of a probationer's or parolee's person or property is compatible with the Fourth Amendment's reasonableness requirement. In *Griffin v. Wisconsin*, over a year after Griffin was placed on probation, Wisconsin enacted a regulation which permitted the warrantless search of a probationer's home if there were "reasonable grounds" to believe that there was contraband inside. The Supreme Court upheld a warrantless search of Griffin's apartment while he was on probation, but not because the search itself satisfied the Fourth Amendment's reasonableness requirement. Instead, "[t]he search of Griffin's home satisfied the demands of the Fourth Amendment because it was

carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). Noting that under its precedent "special needs" can "make the warrant and probable-cause requirement impracticable," the Court held that a state's need to supervise those persons on probation constituted such a special need, thus "permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id.* at 873-76.

More than a decade later, in *United States v. Knights* the Supreme Court took a different approach when considering the constitutionality of a warrantless search supported only by an officer's "reasonable suspicion" of criminal activity by Knights. There, a condition in Knights' California probation order permitted search of his home without either a warrant or "reasonable cause." The Court unanimously held that the search satisfied the Fourth Amendment even where conducted in search of evidence of a new crime, rather than for purposes related to probation for an old one. *United States v. Knights*, 534 U.S. 112 (2001).

In doing so, however, the Supreme Court relied upon neither the "special needs" justification underpinning *Griffin* nor the "consent" rationale found in *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). *Id.* at 118, 122. Instead, it concluded that the search "was reasonable under our general Fourth Amendment approach of 'examining the totality of the circumstances,' with the probation search condition being a salient circumstance." *Knights*, 534 U.S. at 118 (citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). Under that approach, "the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* at 119-20 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

The Supreme Court held that Knights' status as a probationer was relevant to both questions. On the one hand, the intrusion upon Knights' privacy was lessened both because probation generally is a "form of criminal sanction" and because the terms of the search condition in Knights' probation order "significantly diminished Knights' reasonable expectation of privacy." *Knights*, 534 U.S. at 119-20. On the other hand, probation provides the government with a legitimate interest in searching probationers' homes to deter recidivism and detect criminal activity. Considering these factors, the Supreme Court held that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Knights*, 534 U.S. at 120-21.

Importantly, in *Knights* it was not contested that the search of the residence was based upon reasonable suspicion, and the Court therefore did not reach the question whether the search condition - which permitted a search even without "reasonable cause" - would have satisfied the reasonableness requirement of the Fourth Amendment, or constituted consent, if there had been no reasonable suspicion to support it. *Knights*, 534 U.S. at 120 n.6.

The Supreme Court took up that unresolved question five years later in *Samson v. California*, but in the context of a parolee. Samson, as a condition to being released on parole in California, had agreed to be searched without a search warrant and without "cause." Noting that the interests at stake in matters related to probationers and parolee are very similar, the Supreme Court utilized the same "totality of the circumstances" analysis set forth in *Knights* to determine the reasonableness of the search under the Fourth Amendment. The Court held that even the suspicionless search of Samson was reasonable because all parolees in California have reduced expectations of privacy, Samson was actually aware of the parole

8

search condition that subjected him to suspicionless searches, "the extent and reach of these conditions clearly demonstrate that parolees like petitioner have severely diminished expectations of privacy by virtue of their status alone," and the state has a strong interest in supervising parolees. *Samson v. California*, 547 U.S. 843, 849-55 (2006).[4]

Following these decisions, some federal courts of appeal have suggested that the Supreme Court invoked its "special needs" jurisprudence in *Griffin* - rather than the Fourth Amendment's general "reasonableness" requirement applied in *Knights* and *Samson* - because the Wisconsin search condition was enacted only after Griffin's placement on probation. See *United States v. Williams*, 417 F. 3d 373, 378 (3d Cir. 2005) (holding that *Griffin* does not apply where the probationer has expressly agreed to a search condition). But the Sixth Circuit and other courts have held that *Knights* and *Griffin* simply "represent two distinct analytical approaches under which a warrantless probationer search may be excused." *United States v. Herndon*, 501 F. 3d 683, 688 (6th Cir. 2007) (citing *United States v. Freeman*, 479 F.3d 743, 746 (10th Cir. 2007)); see also *United States v. Warren*, 566 F. 3d 1211, 1215 (10th Cir. 2009).[5]

---

[4] Because its conclusion that the search was reasonable was predicated upon its ordinary "totality of the circumstances analysis," the Supreme Court noted that it need not and did not decide whether the search could be justified under either a "consent" or "special needs" rationale. *Id.* at 852 n.3.

[5] In a recent decision, the Sixth Circuit appears to have contradicted *Herndon*'s unequivocal conclusion that *Griffin* and *Knights* represent two equally-available paths to justify a warrantless search of a probationer, stating without explanation that "*Griffin* governed our inquiry in *Henry* because the search was made pursuant to a state policy, but *Knights* governs our inquiry here because the search was made pursuant to a condition of probation." *United States v. Tessier*, No. 15-5284, 2016 WL 659251, at *1 n.1. (6th Cir. Feb. 17, 2016). The dichotomy suggested by *Tessier* contradicts *Herndon*, which concluded under *Griffin* that the Tennessee regulation authorizing the search did not comport with the Fourth Amendment because it lacked a reasonable suspicion requirement, *Herndon*, 501 F. 3d at 689, and further concluded under *Knights* that a search conducted pursuant to *the same regulation* was reasonable under the totality of the circumstances. The Court further notes that *Tessier*'s approach offers no guidance on which analytical path is available where, as is true in many cases and was so in *Herndon*, the search condition at issue is both contained in a state regulation and is incorporated by reference in a probation order signed by the probationer. For purposes of discussion, the Court assumes that both approaches remain viable to validate a search under the Fourth Amendment. *United States v. Payne*, 588 F. App'x 427, 431 (6th Cir. 2014) ("If a warrantless search is reasonable under either *Knights* or *Griffin*, it need not pass muster under the other.")

> Under the *Griffin* line of cases, the Sixth Circuit has held that:
>
> In analyzing a special needs search of a parolee under *Griffin* and its progeny, courts conduct a two-pronged inquiry. First, courts examine whether the relevant regulation or statute pursuant to which the search was conducted satisfies the Fourth Amendment's reasonableness requirement. If so, courts then analyze whether the facts of the search itself satisfy the regulation or statute at issue. With respect to the first prong of the *Griffin* analysis, it is now beyond question that a state statute survives Fourth Amendment scrutiny if it authorizes searches of parolees based on a reasonable suspicion that an individual is violating the terms or conditions of parole. As for the second prong, the reasonable suspicion standard is less stringent than the probable cause requirement. Nonetheless, it still requires that, given the totality of the circumstances, parole officers provide "'articulable reasons' and 'a particularized and objective basis'" for their suspicion of a parole violation.

*United States v. Loney*, 330 F. 3d 516, 520-21 (6th Cir. 2003).

In *United States v. Henry*, 429 F.3d 603 (6th Cir. 2005), the Sixth Circuit applied that test to the same KDOC Policy at issue in this case. At the time, the Kentucky Supreme Court had interpreted the KDOC Policy to require parole officers to have "reasonable suspicion" that a parolee had violated the terms of his parole to justify a warrantless search. *Coleman v. Commonwealth*, 100 S.W.3d 745, 754 (Ky. 2002). Because federal courts are generally bound by the Kentucky Supreme Court's interpretation of Kentucky law, *Griffin*, 483 U.S. at 875, the Sixth Circuit concluded that "*the reasonable-suspicion aspect* of the policy remains reasonable under the Fourth Amendment." *Id*. at 609 (emphasis added). With respect to the *scope aspect* of the KDOC Policy, after the Policy had previously been upheld in *United States v. Payne*, 181 F.3d 781 (6th Cir. 1999), Kentucky broadened the Policy to permit a warrantless search if the officer possessed reasonable suspicion that the probationer has violated *any* condition of probation, not just by possessing contraband. Nonetheless, the Sixth Circuit found the scope aspect of the KDOC Policy reasonable for Fourth Amendment purposes in light of *Loney*, which upheld a comparable provision under Ohio law. *Henry*, 429 F. 3d at 609. With respect to the second prong of the *Loney* analysis, the court concluded that the

10

actual search of Henry did not conform to the requirements of the KDOC Policy because the officers lacked the "reasonable suspicion" required by the Policy under the circumstances of the case, hence invalidating the search. *Id.* at 609-14.

The Sixth Circuit has also explained that under the first part of the *Griffin* analysis - determining whether a state search condition "itself satisfies the Fourth Amendment's reasonableness requirement," *Griffin*, 483 U.S. at 873, a court must "test[] a search condition's validity by confirming the presence of a reasonable suspicion requirement and its consistency with the federal reasonable suspicion standard."). *United States v. Herndon*, 501 F. 3d 683, 689 (6th Cir. 2007) (quoting *Henry* at 609 ("Because Kentucky's probationary search policy incorporates both the quantum of evidence (i.e., reasonable suspicion) approved in *Payne* and the breadth (i.e., not just contraband but any probation violation) approved in *Loney*, we hold that the policy is reasonable under the Fourth Amendment.")). Thus, a search condition that authorizes a search without a "reasonable suspicion requirement that cabined the authority vested in his probation office … may not be justified as a special needs search under *Griffin*."[6] *Id.*

These principles are fairly settled in the federal courts of appeal. However, in *Bratcher*, the Kentucky Supreme Court reviewed the Supreme Court's precedent in *Knights* and recent decision in *Samson* and concluded:

> the Supreme Court upheld the [California] statute, concluding that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." Hence, while the requirement for a warrantless search of a probationer's residence remains the "reasonable suspicion" standard enunciated in *Knights*, based upon *Samson*, there is no

---

[6] As set forth below, *Bratcher* holds that the *Fourth Amendment* requires neither a warrant nor reasonable suspicion to search a parolee. To the extent *Bratcher* could be read instead to hold that the *KDOC Policy* does not require reasonable suspicion, *Herndon* suggests that the Policy would not satisfy the Fourth Amendment's reasonableness requirement under the first prong of the *Griffin* analysis.

11

> analogous requirement under the federal constitution for the search of a parolee's residence.
>
> \*\* \*\* \*\*
>
> In summary, the current state of Fourth Amendment analysis under United States Supreme Court precedent is that a warrantless search of a probationer who has given consent as part of his probation satisfies the Fourth Amendment if there is reasonable suspicion of criminal activity, but the Fourth Amendment presents no impediment against a warrantless and suspicionless search of a person on parole.

*Bratcher*, 424 S.W.3d at 414-15.  Each of these conclusions is incorrect.

First, the Supreme Court in *Samson* did not "uphold" the California statute: the validity of a statute under the Fourth Amendment is only a question under the "special needs" analysis in *Griffin*; the "totality of the circumstances" approach in *Knights* and *Samson* examines the state statutes, but only to inform and assess the probationer or parolee's reasonable expectations of privacy and weigh the state's countervailing interests in searching the person or home of those on supervision.  *Knights*, 534 U.S. at 119-20.  Validity is simply not an issue.

Second, neither *Knights* nor *Samson* purported to create a universally-applicable "reasonable suspicion" standard for warrantless searches of probationers.  Rather, both cases assessed the validity of the search under a "reasonableness" test in light of the totality of the circumstances.  In *Tessier*, the Sixth Circuit flatly rejected the notion that *Knights* established a "reasonable suspicion" requirement to support a warrantless search of a probationer subject to a search condition, stating that "*Knights* stood for no such thing; *Knights* held that reasonable suspicion is sufficient to uphold a search of a probationer who is subject to a search condition but left open the question of whether reasonable suspicion is required to search a probationer who is subject to a search condition."  In short, *Tessier*

viewed Knights as establishing "reasonable suspicion" as a sufficient condition rather than a necessary one. *Tessier*, 2016 WL 659251, at *2.

But even *Tessier* goes too far, if only just. While courts in search of easy answers and bright lines may take comfort in such pronouncements, they are plainly inconsistent with the test actually articulated by the Supreme Court: that the search must "reasonable" when considering the "totality of the circumstances." *Knights*, 534 U.S. at 118. In many instances the probation and parole systems of the various states may be *similar*, but this does not mean that a court may blindly assume that they are *the same* as the California system at issue in *Knights* and *Samson* when evaluating the importance of governmental interests in permitting warrantless searches. Likewise, variations in the specifics of a state laws, including the exact terms of the state's probation and parole regulations and search conditions, are particularly relevant when determining the "degree to which [the search] intrudes upon an individual's privacy" because they directly inform the parolee's legitimate expectations of privacy. *Samson*, 547 U.S. at 849 ("We also considered the facts that Knights' probation order clearly set out the probation search condition, and that Knights was clearly informed of the condition. We concluded that under these circumstances, Knights' expectation of privacy was significantly diminished.") (internal citations omitted). Simply put, reducing the decision in *Knights* to a "reasonable suspicion" standard applicable to warrantless searches of probationers under all state systems of supervision is wholly antithetical to the Supreme Court's holding that each search must be evaluated under the totality of its circumstances.[7]

---

[7] Some courts appear to rely upon the Supreme Court's summary at the end of its opinion for this broad rule. *Knights*, 534 U.S. at 121 ("[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable."). But this statement cannot rationally be divorced from the extensive and context-specific nature of the inquiry based upon California law that led to this conclusion. See *Knights*, 534 U.S. at 118-21; *Samson*, 547 U.S. at 849-55.

13

Third, *Samson* neither held nor suggested that "the Fourth Amendment presents no impediment against a warrantless and suspicionless search of a person on parole." Importantly, the specific question presented in *Samson* was "whether a condition of release [which permitted search of a parolee "with or without a search warrant and *with or without cause*" (emphasis added)] can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Samson*, 547 U.S. at 846-47. The Supreme Court held that, in light of the broad California provision in that case, a suspicionless search of a parolee was reasonable under the Fourth Amendment. As it did in *Knights*, the Supreme Court discussed at length the totality of the circumstances, including the particular provisions of California law applicable to parolees, *Samson*, 547 U.S. at 851-53; noted that "the parole search condition under California law - requiring inmates who opt for parole to submit to suspicionless searches by a parole officer or other peace officer "at any time" was "clearly expressed" to Samson, and that he signed an order expressly agreeing to its terms, *id*. at 852; set forth matters supporting California's interest in searching those under supervision, including statistical evidence showing the number of California's parolees and the recidivism rates, *id*. at 853-55; and noted that California law independently proscribes suspicionless searches if conducted in an "arbitrary, capricious or harassing" manner, *id*. at 856.

The Kentucky Supreme Court in *Bratcher* also addressed the fact that the KDOC Policy, unlike the search condition in *Samson*, required the probation officer to have "reasonable suspicion" that the probationer was violating the conditions of probation before conducting a search. The Court held:

> Although these provisions may be seen as more stringent than *Samson*, they do not alter the Fourth Amendment analysis. It is fundamental that by

14

> administrative rule or statute a state may impose upon its police authorities more restrictive standards than the Fourth Amendment requires. Such standards, however, cannot expand the scope of the Fourth Amendment itself. *Virginia v. Moore*, 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (a state is free to prefer one search and seizure policy among several constitutionally permissible options, but its choice of a more restrictive option does not render less restrictive ones violative of the Fourth Amendment).

*Bratcher*, 424 S.W.3d at 415.  This too is incorrect.

The Kentucky Supreme Court's reliance upon *Moore* to conclude that the particular terms of the KDOC Policy are simply not relevant to the reasonableness of the search under the Fourth Amendment was misplaced.  In *Moore*, the Supreme Court held that a violation of state law restricting searches to conditions more narrow than those permitted under the Fourth Amendment does not, *ipso facto*, result in a violation of the Fourth Amendment and the consequences resulting from such violation, such as the exclusion of evidence obtained. *Virginia v. Moore*, 553 U.S. 164, 171-77 (2008).  But merely considering state law to inform the supervisee's reasonable expectations of privacy and the state's interests in warrantless searches does not alter the contours of the Fourth Amendment, which requires in all instances that the search be "reasonable."

Numerous courts of appeal have therefore held that the particular terms of the state's search condition are directly relevant to this inquiry.  Cf. *United States v. Graham*, 553 F. 3d 6, 17 (1st Cir. 2009) (rejecting government's reliance upon *Moore*, noting that "[t]he Fourth Amendment's totality of the circumstances test does account for a probationer's expectation of privacy, which in turn may be shaped to some degree by state law and by what the state has communicated to the probationer.  The Supreme Court appears to have established as much in cases like *Knights* and *Samson*."); *United States v. Hill*, 776 F. 3d 243, 249 (4th Cir. 2015) ("In our view, however, the specific probation condition authorizing warrantless searches was critical to the Court's holding [in *Knights*]."); *United States v. Carnes*, 309 F. 3d

15

950, 961-63 (6th Cir. 2002) (noting the differences in the search conditions as relevant under the Fourth Amendment analysis); *United States v. Herndon*, 501 F. 3d 683, 690 (6th Cir. 2007) ("In addition [to his status as a probationer], the specific terms of Herndon's probation, to which he assented, alerted him to his reduced privacy expectation. Directive 5 … authorized Harrien to check Herndon's computer for Internet connectivity and activity at any time without restriction, creating a significant limit on any privacy interest Herndon may have held in the computer."); *United States v. Hagenow*, 423 F. 3d 638, 642 (7th Cir. 2005) (noting that "Like the probationer in *Knights*, Hagenow signed a specific waiver of rights regarding searches during probation, agreeing to 'waive any and all rights as to search and seizure' while on probation."); *United States v. White*, 781 F.3d 858, 861 (7th Cir. 2015) (explaining that because reasonableness of search of parolee's bag "turns in large part on the extent of White's legitimate expectations of privacy … our analysis is shaped by the state law that governed White's terms of parole.") (internal citation omitted); *United States v. Gonzales*, 535 F. 3d 1174, 1182 (10th Cir. 2008) (noting that under *Moore* a violation of state law is not *determinative* of the constitutionality of police conduct, but it may be *relevant* to the reasonableness under the Fourth Amendment, and "compliance with state law is 'highly determinative' only when the constitutional test requires an examination of the relevant state law or interests."); *Watson v. Cieslak*, No. 09Civ2073(DAB)(JCF), 2010 WL 93163 at *4 (S.D.N.Y. Jan. 11, 2010) ("Because the [Supreme] Court based its holding at least in part upon the language of the California parole agreement, which more explicitly diminishes the parolee's expectation of privacy than does the equivalent New York agreement, the effect of *Samson* in this jurisdiction remains unclear.")

As the Tenth Circuit has explained, "[p]arolee searches are ... an example of the rare instance in which the contours of a federal constitutional right are determined, in part, by

16

the content of state law." *United States v. Freeman*, 479 F.3d 743, 747-48 (10th Cir. 2007). Invalidating the search in that case, the court placed direct reliance upon the language of the particular parolee search condition at issue: "*Samson* does not represent a blanket approval for warrantless parolee or probationer searches by general law enforcement officers without reasonable suspicion; rather, the Court approved the constitutionality of such searches only when authorized under state law. Kansas has not gone as far as California in authorizing such searches, and this search therefore was not permissible in the absence of reasonable suspicion." *Id*. at 748.

The foregoing establishes that Lafferty's search, if supported by neither a warrant nor reasonable suspicion as Jones' alleges, does or may not comport with the Fourth Amendment. The Court may not therefore dismiss Jones' complaint for failure to state a claim.

The more difficult question is raised by Jones' assertion of qualified immunity. At the initial pleading stage, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. *Wood v. Moss*, __ U.S. __, 134 S. Ct. 2056, 2067-68, 188 L. Ed. 2d 1039 (2014) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011)) (internal quotation marks omitted).

In light of the foregoing discussion, Jones' complaint – particularly when evaluated under the liberal standard afforded to *pro se* pleadings – satisfies the first requirement because it adequately sets forth at least a colorable claim that Lafferty violated his Fourth Amendment rights by searching his apartment unannounced and without a warrant.

But determining whether this right was "clearly established," otherwise plain under federal precedent, is clouded by the Kentucky Supreme Court's recent holding that "the

17

Fourth Amendment presents no impediment against a warrantless and suspicionless search of a person on parole." *Bratcher*, 424 S.W.3d at 414-15.  While this conclusion is incorrect, that is not necessarily enough to strip an officer acting in good faith reliance upon viable precedent.  After all, to determine whether a right was "clearly established," the court must assess "whether it would be *clear* to a reasonable officer that his conduct was unlawful in the situation he confronted." *Reynolds v. City of Anchorage*, 379 F.3d 358, 367 (6th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (emphasis added)).  See *Pearson v. Callahan*, 555 U.S. 223, 243-44 (2009) ("An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment.").  Because there is no information in the record from which the Court can draw a conclusion regarding this central question, the Court is presently unable to determine whether Officer Lafferty is entitled to qualified immunity.  The Court will therefore deny his motion to dismiss, without prejudice to his right to raise the issue of qualified immunity upon a more complete record.

Having concluded that defendant's motion to dismiss must be denied at this juncture, the Court will refer this matter to a magistrate judge for pretrial management, including the preparation of a report and recommendation upon any subsequent motion to dismiss or motion for summary judgment.

Accordingly, **IT IS ORDERED** that:

1. Defendant's motion to dismiss the complaint [R. 34] is **DENIED WITHOUT PREJUDICE**.

2.	Pursuant to 28 U.S.C. § 636(b), this matter is **REFERRED** to a United States Magistrate Judge to conduct all further proceedings, including preparing proposed findings of fact and recommendations on any dispositive motions. The Clerk of the Court shall **ASSIGN** this matter to a Magistrate Judge.

Dated March 29, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY