UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 15-51-KKC-CJS

RONALD L. JONES, JR.                                                                                                  PLAINTIFF

v.                 **REPORT AND RECOMMENDATION**

TODD LAFFERTY                                                                                 DEFENDANT

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendant Todd Lafferty's Motion for Summary Judgment. (R. 71). Plaintiff Ronald L. Jones, Jr., by counsel, filed a Response to the Motion on August 11, 2017. (R. 74). The record reflects that Defendant Lafferty did not file a Reply in Support of his Motion, and his time to do so has expired. *See* Rule 7.1(c) of the Joint Local Rules of Civil Practice ("LR 7.1(c)"). Defendant's Motion is now ripe for decision, and has been referred to the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* R. 43). For the reasons set forth below, the undersigned **recommends** Plaintiff's claims against Defendant Lafferty be **dismissed with prejudice**.

I.     FACTS

This civil action stems from the December 11, 2014 arrest of Plaintiff Ronald L. Jones, Jr. ("Plaintiff" or "Jones") and the attendant search of his residence led by Defendant, Probation and Parole Officer Todd Lafferty ("Defendant" or "Lafferty"). It is undisputed that, at the time of the factual circumstances giving rise to this action, Plaintiff Jones was on probation pursuant to KRS § 439.265 following a conviction in the Circuit Court of Fayette County, Kentucky, and subject to the supervision of the Kentucky Division of Probation and Parole. (*See* R. 71-2; R. 74, at 2).

Among the requirements imposed by the Fayette Circuit Court's Order granting probation, Plaintiff was ordered to "comply with the regulations of the Division of Probation and Parole and the directions of the Probation Officer" and to "[c]onsent to any search of your person or of places or property under your control when requested by your probation officer or police officer[.]"  (R. 71-2, at 2).

On December 10, 2014, the Fayette Circuit Court entered an Order of Contempt based upon Jones's failure to appear before that court for a probation revocation hearing.  (R. 71-3).  The Order of Contempt directed the Clerk of the Fayette Circuit Court to issue a warrant for Jones's arrest.  (*Id.*).  Defendant Lafferty attests that on December 11, 2014 at approximately 11:30 a.m., he accompanied other Probation and Parole officers as well as police officers to Jones's apartment complex to apprehend him pursuant to the Fayette Circuit Court's arrest warrant.  (R. 71-4).

Lafferty attests that upon arriving at the apartment complex, he consulted the leasing office and confirmed that Jones was the current, sole occupant of the apartment on file.  (*Id.*).  Lafferty further attests that based upon Jones's history of refusing home visits by not answering when officers knocked on his door, Lafferty asked if a key was available to allow the officers access to Jones's apartment in the event he refused to open the door.  (*Id.*).  The leasing office agreed to provide a key to grant access to the apartment.  (*Id.*).  The officers then approached Jones's apartment door and repeatedly attempted to make contact with him.  Lafferty attests that he observed someone peer out of the peephole on the apartment's front door, and then heard sounds of a heavy object being placed in front of the door.  (*Id.*).  The officers continued knocking and announced their presence, but no one responded.  (*Id.*).

Based upon confirmation of Jones's active address and solo occupancy by the leasing office, combined with Lafferty's own observations at the front door of the apartment as well as his

2

knowledge of Jones's history of noncompliance, Lafferty attests he concluded that Jones was engaging in efforts to prevent apprehension and did not intend to surrender. (*Id.*). Accordingly, Lafferty then used the key to unlock the door and pushed aside a chair that partially obstructed the entrance to gain entry to the apartment. (*Id.* at 2). Once inside, Defendant Lafferty observed Jones lying on the couch with his arms and hands underneath his body. (*Id.*).

Lafferty attests that Jones ignored the officers' commands to stand up and present his hands in the air; consequently, the officers forcibly removed Jones from the couch to a handcuffing position, face-down on the floor. (*Id.*). Lafferty attests that Jones continued to ignore the officers' verbal commands. (*Id.*). Furthermore, Jones resisted the officers' attempts to place handcuffs on him, and attempted to push himself up off of the ground with his hands and feet. (*Id.*). After this physical struggle with the officers, Jones was placed in handcuffs and allowed to sit up; Lafferty attests that officers then noted two abrasions above Jones's left eye. (*Id.*). A subsequent search of the couch revealed a large black-handled butcher knife hidden inside. (*Id.*). Lafferty attests that the arrest proceeded without further incident and Jones was transported to the Fayette County Detention Center and processed for the probation violation. (*Id.* at 3). Medical records from the Fayette County Detention Center produced in discovery indicate that at 7:15 a.m. the following morning, Jones initiated a sick call visit from the facility nurse and requested antibiotic ointment for abrasions on his face and knee. (R. 71-5, at 2).

Plaintiff Jones, proceeding without counsel,[1] subsequently filed this action on March 2, 2015. (R. 1). In his Amended Complaint,[2] Jones alleges that on December 11, 2014, he was sitting

---

[1] Plaintiff originally filed this action *pro se*, but counsel Edward Dove entered an appearance on Plaintiff's behalf on November 6, 2015. (R. 38).

[2] Plaintiff filed the Amended Complaint on April 14, 2015. (R. 17).

3

on the sofa in his apartment when Defendant Lafferty and several Lexington police officers used a key to open the door, and entered the premises without knocking, without announcing their presence, and without a warrant. (R. 17, at 3-4). Plaintiff's Amended Complaint asserts that Defendant Lafferty arrested him at that time because "violations of supervision were present in the residence." (R. 1-1). Jones alleges that he "was assaulted by Todd Lafferty and others," that "Mr. Lafferty use[d] unnecessary force," and that as a result he had to be treated by medical staff at the Fayette County Detention Center and prescribed antibiotic ointment. (R. 17, at 7). Based upon these allegations, the Amended Complaint asserts that Lafferty violated Jones's Fourth Amendment rights by entering the apartment without a warrant, as well as Jones's Eighth and Fourteenth Amendment rights due to the use of excessive force during the arrest by Lafferty and the other officers.[3] (R. 17, at 3-4, 7).

Following the close of discovery in this matter (*see* R. 67), Defendant Lafferty submitted the subject Motion for Summary Judgment on May 10, 2017. (R. 71). Defendant's Motion is accompanied by the affidavit of Lafferty and additional documents in support of his arguments that the December 11, 2014 search was reasonable under the Fourth Amendment and that the use of force during Plaintiff Jones's arrest was not excessive in violation of the Eighth and Fourteenth Amendments. (*See* R. 71-1). In his Response (R. 74) in opposition to Defendant's Motion for Summary Judgment, Jones expressly abandons his claim that the December 11, 2014 search of his

---

[3] Likewise, for their alleged assistance to Defendant Lafferty on December 11, 2014, Plaintiff also brought suit against the Commonwealth of Kentucky, the Lexington-Fayette Urban County Government, and the Lexington Police Department, as well as Winterwood Property Management and Bethany Treble, the manager of the apartment complex who cooperated with law enforcement by providing a key to Plaintiff's apartment. (*See* R. 1; R. 17). Upon initial screening of the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, the Court dismissed Plaintiff's claims against the remaining Defendants. (R. 24, at 5). The Court also dismissed Plaintiff's claims against Defendant Lafferty in his official capacity. (*Id.*) Accordingly, the only issues that remained pending in this action after entry of the Court's Memorandum Opinion and Order were Plaintiff's claims against Defendant Lafferty in his individual capacity "regarding warrantless entry and unnecessary force." (*Id.* at 5).

home violated his Fourth Amendment rights. (R. 74, at 3). Jones concedes that "discovery has established that on December 10, 2014 that the Fayette Circuit Court issued a warrant of arrest of the Plaintiff [and] [t]herefore, the search of the Plaintiff's home on December 11, 2014 was pursuant to [a] validly issued warrant." (*Id.* at 3). Thus, the only issue remaining in this case is Jones's claim that Lafferty used excessive force during the subject arrest. (*Id.*).

## II.   STANDARD OF REVIEW

Under the federal rules, summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[4] In reviewing motions for summary judgment, the Court must view all facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). However, as Plaintiff's Response brief notes, "[a] principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." (R. 74, at 2) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Accordingly, while the initial burden of showing there is no genuine issue of material fact is on the moving party, once the moving party has met its burden, the opposing party must demonstrate that there is sufficient evidence on which the jury could reasonably find for the nonmoving party. *Dominguez*, 555 F.3d at 549.

Furthermore, "the moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Hartsel v. Keys*, 87 F.3d 795,

---

[4] Defendant Lafferty moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. (*See* R. 71-1, at 3). However, Rule 56 was amended and reorganized in 2010, and Rule 56(a) now sets forth the standard for granting summary judgment (previously found in Rule 56(c)). Accordingly, the Court construes Defendant's Motion to be submitted pursuant to Rule 56(a).

799 (6th Cir. 1999) (quoting *Celotex*, 477 U.S. at 325) (internal quotations omitted).  Once the moving party points out that there is an absence of evidence to support the nonmoving party's case, the trial court is not required to scour the entire record to establish that "it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).  Rather, the nonmoving party must affirmatively come forward with "specific facts showing that there is a genuine issue for trial."  *Matsushita*, 475 U.S. at 587.  Evidence that is "merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  To determine whether a genuine dispute of material fact exists, courts "must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record." *Brown v. Chapman*, 814 F.3d 447, 464 (6th Cir. 2016) (citing *Liberty Lobby*, 477 U.S. at 249). The trial court does not "weigh the evidence and determine the truth of the matter but . . . determine[s] whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.  Summary judgment should be granted unless a court finds "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Brown*, 814 F.3d at 464.

## III. ANALYSIS

Plaintiff's remaining cause of action in this case is limited to the excessive force claim against Defendant Lafferty in his individual capacity.  (*See* R. 24, at 50; R. 74, at 3).  Defendant Lafferty's Motion asserts that Lafferty is entitled to summary judgment both on the merits and pursuant to the defense of qualified immunity because, while Plaintiff incurred some minor abrasions when law enforcement attempted to subdue and arrest him, there is no evidence Defendant used unnecessary force in violation of Plaintiff's constitutional rights.  In response, Plaintiff asserts that there is a sufficient question of fact to preclude summary judgment because

Plaintiff allegedly sustained abrasions to his face and knee during his arrest and sustained injuries to his wrists as a result of tight handcuffs law enforcement officers utilized during the arrest. Even viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, however, Plaintiff has failed to come forward with specific facts demonstrating that there is a genuine issue for trial. Piercing the pleadings, Plaintiff has submitted no deposition testimony, answers to interrogatories, admissions, or affidavits that are part of the record, to support his excessive force claim. Accordingly, because there is insufficient evidence for a jury to return a verdict for Plaintiff, his claim fails as a matter of law and summary judgment is appropriate both pursuant to the defense of qualified immunity and on the merits.

> **A.   Defendant's entitlement to summary judgment on the merits is analyzed in conjunction with the defense of qualified immunity, because each standard calls for a determination of whether Defendant used excessive force.**

Defendant Lafferty has presented the subject Motion for Summary Judgment based upon the merits of the claim as well as pursuant to the defense of qualified immunity. The Court's analysis addresses the merits of Plaintiff's claim and the qualified immunity defense simultaneously, because the Court's inquiry under both standards merges into a single examination of whether there is a genuine issue of material fact as to Defendant's alleged commission of excessive force in violation of Plaintiff's constitutional rights.

First, the qualified immunity defense shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009); *Burgess v. Fischer*, 735 F.3d 462, 471-72 (6th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a government official raises this defense, it is the plaintiff's burden to show that

7

the official is not entitled to qualified immunity. *Burgess*, 735 F.3d at 471-72 (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)); *see also Baynes v. Cleland*, 799 F.3d 600, 609 (6th Cir. 2015) (stating that the plaintiff bears the burden to show that the defendant is not entitled to qualified immunity). A defendant "enjoys qualified immunity on summary judgment unless the facts alleged and evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Morrison*, 583 F.3d at 400. *See also Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009); *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). If a plaintiff fails to show that a constitutional right was violated, he will have failed to carry his burden and qualified immunity bars the plaintiff's claims. *See Chappell*, 585 F.3d at 907. The Court is free to consider the two prongs of the qualified immunity test in any order. *See Burgess*, 735 F.3d at 472 (citing *Pearson v. Callahan*, 555 U.S. 223, 226 (2009)).

Here, Plaintiff can establish the second prong of the qualified immunity test. The parties do not dispute that a reasonable person in Lafferty's position at the time of Jones's arrest would have known that Plaintiff had a clearly established constitutional right to be free from excessive force; the law is clear that a state actor like Lafferty may not use excessive force to effectuate an arrest. *See Burgess*, 735 F.3d at 474. *See also Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001) ("This court has held that the right to be free from excessive force is a clearly established Fourth Amendment right"). Accordingly, the qualified immunity defense centers upon whether Lafferty violated Jones's constitutional right to be free from excessive force.

Mirroring the relevant qualified immunity inquiry under the circumstances at hand, Defendant is entitled to summary judgment on the merits unless Plaintiff demonstrates a genuine issue of material fact as to whether Lafferty violated Jones's constitutional right to be free from subjection to excessive force.[5] The Sixth Circuit applies the Fourth Amendment's unreasonable seizure jurisprudence to determine whether a free citizen has been subjected to excessive force. *Morrison*, 583 F.3d at 400 (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)). Whether an officer has exerted excessive force during the course of seizure is determined under a standard of "objective reasonableness." *Morrison*, 583 F.3d at 401. This entails "balancing the consequences to the individual against the government's interests in effecting the seizure." *Id.* The ultimate question is "whether the totality of the circumstances justified a particular sort of search or seizure." *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). The Court should judge the lawfulness of the conduct from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

---

[5] The standard for what type of force is considered excessive in violation of a plaintiff's constitutional rights depends upon the status of the plaintiff. *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015) (explaining that excessive force claims stemming from state actions pursuant to 42 U.S.C. § 1983 can be resolved under the Fourth, Eighth, or Fourteenth Amendments, depending upon the plaintiff's status at the time of the incident as either a free citizen in the process of being arrested or seized, a convicted prisoner, or "someone in 'gray areas' around the two"). *See also Burgess v. Fischer*, 735 F.3d 462, 471-72 (6th Cir. 2013); *Leary v. Livingston Cty.*, 528 F.3d 438, 443 (6th Cir. 2008); *Graham*, 490 U.S. at 388; *Witley v. Albers*, 475 U.S. 312, 318-22 (1986); *Lanman v. Hinson*, 529 F.3d 673, 680-81 (6th Cir. 2008); *Phelps v. Coy*, 286 F.3d 295, 299-300 (6th Cir. 2002). The distinction is significant because the showing a plaintiff must make is heightened for convicted prisoners, and in turn, a plaintiff "has a substantially higher hurdle to overcome to make a showing of excessive force under the Fourteenth Amendment as opposed to under the Fourth Amendment." *Burgess*, 735 F.3d at 472 (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001)). Courts are divided over the proper characterization of a defendant awaiting adjudication on a probation or parole violation. *See, e.g., Kellum v. Bernalillo Cty.*, 250 F. Supp. 3d 846, 852 (D.N.M. 2017) (collecting cases). Here, the parties do not address Plaintiff's characterization as a convicted prisoner, pretrial detainee, or free citizen at the time of his arrest; accordingly, viewing all facts and drawing all reasonable inferences in a light most favorable to Plaintiff, the Court's analysis characterizes Plaintiff as a free citizen at the time of his arrest and utilizes the most deferential Fourth Amendment standard to determine whether his excessive force claim may survive summary judgment.

Generally, determination of whether an officer's use of force was reasonable under the circumstances requires a fact-intensive inquiry based on the totality of the circumstances that "pay[s] particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Morrison*, 583 F.3d at 401. *See also Chappell*, 585 F.3d at 908 (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989) (stating that application of the "reasonableness" test in the context of a qualified immunity defense "requires careful attention to the facts and circumstances of each particular case"). As Plaintiff properly notes, because such an inquiry often involves disputed facts, § 1983 actions involving claims of excessive force often proceed to jury presentation. (*See* R. 74, at 5) (citing *Grooms v. Dockter*, 95-1261, 1996 WL 26917, 76 F.3d 378, at *3 (6th Cir. Jan. 23, 1996) (table decision) (affirming denial of summary judgment but noting "that, although the facts as alleged by the plaintiff do not now result in qualified immunity for either defendant, <u>as the evidence develops</u>, qualified immunity will exist if the plaintiff cannot prove facts that constitute the violation of a clearly established constitutional right") (emphasis added)). *See also Bletz v. Gribble*, 641 F.3d 743, 749 (6th Cir. 2011) ("if genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper"); *See also Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) ("Summary judgment is inappropriate where there are contentious factual disputes over the reasonableness of the use of deadly force").

However, even fact-specific inquiries cannot preclude summary judgment when the record has been developed and there remains no evidence of any factual dispute. *See White v. Pauly*, 137 S. Ct. 548, 551 (2017) (stating that "qualified immunity is important to society as a whole . . . and as an immunity from suit, qualified immunity is effectively lost if a case is erroneously permitted

10

to go to trial") (internal citations omitted). *See also Bletz*, 641 F.3d at 654 (distinguishing cases where summary judgment was appropriate due to lack of factual disputes from those where the facts were refuted by physical or circumstantial evidence or disputed by contrary testimony); *Chappell*, 585 F.3d at 909 (acknowledging that "*if* there is some evidence—more than a mere scintilla of evidence—that [an individual], through his conduct, judged from the perspective of reasonable officers on the scene, did not give the officers probable cause to believe that he posed a serious threat of harm, a genuine fact dispute is created"). Unlike cases where the evidence was still developing, *see Grooms*, 76 F.3d at *3, at the summary judgment stage, "<u>once the relevant set of facts is determined</u> and all reasonable inferences are drawn in favor of the plaintiff, <u>to the extent supported by the record</u>, the question whether the [officers'] actions were objectively unreasonable is a pure question of law." *Chappell*, 585 F.3d at 908 (emphasis added). Furthermore, "to withstand a properly supported motion for summary judgment, plaintiff must do more than rely merely on the allegations of his pleadings or identify a 'metaphysical doubt' or hypothetical 'plausibility' based on a lack of evidence; he is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits,' showing that there is a genuine issue for trial." *Id.* at 912 (citing *Matsushita*, 475 U.S. at 586-87) (granting summary judgment when the factual record was fully developed and finding there was not any "substantial likelihood that the record could be improved in trial").

In sum, the parties do not dispute that a reasonable person in Lafferty's position at the time of Jones's arrest would have known that Plaintiff had a clearly established constitutional right to be free from excessive force; Defendant's qualified immunity defense therefore centers upon whether Lafferty violated Jones's constitutional right to be free from excessive force. Mirroring the relevant qualified immunity inquiry under the circumstances at hand, Defendant is entitled to

11

summary judgment on the merits unless Plaintiff demonstrates a genuine issue of material fact as to whether Lafferty violated Jones's constitutional right to be free from subjection to excessive force. Accordingly, if there is no evidence of a genuine issue of material fact to support Plaintiff's claim that Defendant violated his constitutional right to be free from excessive force, then Defendant is entitled to summary judgment both on the merits and pursuant to the defense of qualified immunity as well.

> **B. Summary judgment is appropriate in the instant action because the record fails to demonstrate that Defendant subjected Plaintiff to excessive force.**

Here, the Court's review of the record, as well as an examination of Plaintiff's responsive filing, reveals that—even viewing all facts in the light most favorable to Plaintiff—summary judgment should be granted as a matter of law, both on the merits and pursuant to the defense of qualified immunity. Discovery evidence is poor from both sides, especially Plaintiff; however, discovery has closed and the relevant set of facts determined. Plaintiff presents two grounds in support that Lafferty engaged in excessive force. First, Plaintiff asserts that Lafferty and other officers assaulted him during the arrest, resulting in abrasions on Plaintiff's face and knee. Second, Plaintiff asserts that the officers' use of tight handcuffs in subduing and arresting Plaintiff constituted excessive force in violation of Plaintiff's constitutional rights. Both grounds fail as a matter of law.

> **1. Plaintiff failed to demonstrate that the abrasions sustained to his face and knee were the result of excessive force.**

Plaintiff contends there is a genuine issue of material fact as to whether Lafferty's alleged use of force during his arrest, which caused abrasions to his face and knee, was excessive in violation of his Fourth Amendment rights. As set forth *supra*, the Sixth Circuit utilizes an "objective reasonableness" standard to determine whether excessive use of force occurred.

*Morrison*, 583 F.3d at 401-04 (citing *Kostrzewa*, 247 F.3d at 639).  The assessment involves a fact-specific inquiry based on the totality of the circumstances that "pay[s] particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Morrison*, 583 F.3d at 401.  Because the reasonableness standard seeks to balance the costs to the individual against the government's interest in using force to neutralize threats to the safety of officers or others, "a primary consideration in the inquiry is whether the law enforcement officer had a legitimate government interest, i.e. justification, to exert force."  *Id.*

Here, it is undisputed that Plaintiff sustained abrasions to his face during the subject arrest; furthermore, medical records indicate that Plaintiff requested antibiotic ointment the following day for abrasions on his head and knee.  (*See* R. 71-5).  However, the record demonstrates that under the totality of the circumstances, the use of force to subdue and arrest Defendant was nonetheless reasonable as a matter of law.  First, the record indicates—and Plaintiff offers no evidence to dispute—that Defendant Lafferty had justification to exert force, because Plaintiff posed an immediate threat to the officers' safety.  Defendant Lafferty attested—and again, Plaintiff did not dispute—that at the time of the arrest, Plaintiff refused to stand and place his arms in the air; rather, Plaintiff lay on a couch with his hands concealed near the location where a butcher knife was hidden.  The threat of a concealed weapon weighed in favor of the government's interest in using force to neutralize threats to the safety of the officers.

Furthermore, the record reflects—and Plaintiff offers no evidence to dispute—that Plaintiff was actively resisting arrest.  Unlike the plaintiff in *Morrison*, who survived summary judgment when the record showed she sustained scratches to her face while she was handcuffed, lying down, and compliant with the officer's commands, *see* 583 F.3d at 407, here the record demonstrates that

13

the abrasions to Plaintiff's face and knee were incurred while he actively resisted arrest. (*See* R. 71-4). *See also Getz v. Swoap*, 833 F.3d 646, 653 (6th Cir. 2016) (holding that officer did not violate Fourth Amendment, even if handcuffs were tight enough to cause abrasions, when the subject resisted arrest and use of force was necessary to establish control and restrain the defendant). Not only had Plaintiff sought to obstruct the doorway to his apartment to bar the officers' entry, but Lafferty attested that Plaintiff refused to submit to the arrest and had to be physically removed from the couch. While Plaintiff's Amended Complaint makes the bald allegation that "I was assaulted by Todd Lafferty and others" he offers no evidence in support of his claim and fails to refute Lafferty's attestations. Rather, the record shows that he continued to resist arrest by repeatedly pushing himself off of the ground with his hands and feet, ignoring verbal commands rather than allowing himself to be handcuffed. (R. 71-4, at 2).

Defendant Lafferty has established with the affidavit attached to his subject Motion that summary judgment is appropriate, because he has shown there is an absence of evidence to support Plaintiff's claim of excessive force. Plaintiff Jones, however, has failed to come forward with specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587. To determine whether a genuine dispute of material fact exists, courts must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. *Brown*, 814 F.3d at 464. Here, the record indicates that the parties engaged in discovery and that Lafferty's deposition was taken; moreover, Jones could have attached an affidavit to his Response to support his claim that an issue of material fact exists. *See* Fed. R. Civ. P. 56(c)(1)(A). Jones, however, has wholly failed to offer any evidence to counter Lafferty's affidavit or Lafferty's portrayal of the facts, leaving only what Plaintiff has alleged in the four corners of his Amended Complaint in support of his excessive force claim. Plaintiff has

offered no evidence, either in the form of an affidavit, deposition, interrogatory, or other document, to contradict Defendant Lafferty's attestation that the use of force was necessary to establish control and restrain Jones as he continued to ignore the officers' commands and actively resist arrest.

In sum, Plaintiff has failed to offer sufficient evidence to create a genuine issue of material fact regarding the reasonableness of Lafferty's use of force under the totality of the circumstances as presented on the record. Accordingly, because Plaintiff failed to set forth any evidence in support of his claim that Lafferty violated a constitutional right, qualified immunity shields Lafferty from suit, and, simultaneously, summary judgment is appropriate as a matter of law. *Chappell*, 585 F.3d at 916.

### 2. Plaintiff failed to demonstrate evidence that Officer Lafferty utilized excessively forceful or unduly tight handcuffing during the arrest.

Finally, Plaintiff contends there is a genuine issue of material fact as to whether the law enforcement officers' use of handcuffs at the time of the arrest subjected him to excessive force. (R. 74, at 3-4) ("The Plaintiff sustained injuries . . . to his wrists and because he was handcuffed he had to be examined after his arrival at the Fayette County Detention Center. . . . Therefore, under the current status of the law the question of whether the Plaintiff's arrest constituted excessive force is a question for the jury"). As set forth *supra*, the Sixth Circuit generally utilizes an "objective reasonableness" standard to determine whether excessive use of force occurred. *Morrison*, 583 F.3d at 401-04 (citing *Kostrzewa*, 247 F.3d at 639). To determine reasonality in the specific context of an excessive force claim based upon unduly tight or excessively forceful handcuffing, "[t]he Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison*, 583 F.3d at 401. In order for a handcuffing claim to survive summary judgment, however, a plaintiff must offer sufficient evidence to create a genuine

15

issue of material fact that (1) he complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing. *Id.* (citing *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005). *See also Baynes v. Cleland*, 799 F.3d 600, 608 (6th Cir. 2015).

For example, in *Morrison*, the Sixth Circuit found that summary judgment was improper when the record showed that law enforcement officers refused to loosen the plaintiff arrestee's handcuffs after receiving complaints that they were too tight, and when there was evidence that the officers pushed the plaintiff's face into the ground multiple times, causing scratches to her face, after she was already handcuffed and subdued. *Morrison*, 583 F.3d at 401-04. In contrast, in *Lyons*, the plaintiff alleged the defendant police officer handcuffed her too tightly, which resulted in bruising on her wrists. *Lyons*, 417 F.3d at 575. The Sixth Circuit in *Lyons* observed that no other injuries were alleged, the plaintiff had not complained that the tightness of the handcuffs persisted beyond the moment of handcuffing, and the plaintiff alleged "little in the way of the physical injuries caused by the handcuffing." *Id.* at 576. Accordingly, the Sixth Circuit reversed the district court's denial of qualified immunity on summary judgment. *Id.*

Here, as in *Lyons*, summary judgment is appropriate because Plaintiff failed to come forth with any evidence, either attached to his Response or in the record, demonstrating that the officers' use of handcuffs at the time of his arrest met the three prong test set forth in *Lyons*. First, there is no evidence that Jones complained to Lafferty that the handcuffs were too tight or that Lafferty then ignored any such complaints. More significant, there is no evidence of any physical injuries sustained by Plaintiff as a result of the handcuffing. Medical records from the Fayette County Detention Center produced by Defendant in discovery indicate that the morning following his arrest, Plaintiff Jones initiated a sick call visit from the facility nurse and requested antibiotic

ointment for abrasions on his face and knee. (R. 71-5, at 2). Nowhere is there any indication of injuries to Plaintiff's wrists or hands or even any complaints by Plaintiff regarding his wrists or hands. (*See id.*).

Indeed, the circumstances here are even less compelling than in *Lyons*, as Jones has neither alleged in his Amended Complaint, nor presented any evidence of, physical injuries caused by the handcuffing. The record is devoid of any evidence the Plaintiff sustained injuries to his wrists. Plaintiff did not submit any deposition testimony, answers to interrogatories, admissions, affidavits, or other evidence in support of his averment. Rather, the only evidence on the record shows abrasions to Plaintiff's face and knee were incurred when he resisted arrest, unrelated to the handcuffing. *See Martin v. Heideman*, 106 F.3d 1308 (6th Cir. 1997) (plaintiff's allegations of face abrasions insufficient when injuries were not alleged to have resulted from the handcuffing, but rather from an altercation with the arresting officers that preceded the handcuffing).

A summary judgment motion "requires the nonmoving party to go beyond the pleadings." *Celotex*, 477 U.S. at 324; *see also Leary v. Livingston Cty.*, 528 F.3d 438, 444 (6th Cir. 2008) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial"); *Chappell v. City of Cleveland*, 528 F.3d 901, 912 (6th Cir. 2009) (finding no genuine issue of material fact when the plaintiff failed to refute detectives' account of the circumstances they confronted). Plaintiff Jones has failed to offer evidence outside of the four corners of his own pleading to create a genuine issue of material fact regarding Defendant Lafferty's alleged use of excessive force. Because Jones cannot demonstrate that Lafferty violated a constitutional right,

qualified immunity shields Lafferty from suit, and simultaneously summary judgment is appropriate. *Chappell*, 585 F.3d at 916.

## IV.   CONCLUSION AND RECOMMENDATIONS

As discussed above, Plaintiff has failed to demonstrate that there is a genuine dispute of material fact such that there is sufficient evidence for a jury to return a verdict in his favor against Defendant Lafferty. Accordingly,

**IT IS RECOMMENDED** that:

1.   Defendant Lafferty's Motion for Summary Judgment (R. 71) be **granted**, and the claims against Defendant Lafferty be **dismissed with prejudice**; and

2.   This civil action **be stricken** from the active docket of this Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Signed this 12th day of February, 2018.



Signed By:
Candace J. Smith
United States Magistrate Judge

J:\DATA\Orders\civil lexington\2015\15-51-KKC R&R on msj.final.docx